## DISCOUNTED PAYOFF AGREEMENT AND RELEASE

This DISCOUNTED PAYOFF AGREEMENT AND RELEASE (this "**Agreement**") is entered into as of this 30th day of May, 2014, by and among BOWERY TOWER LLC, a New York limited liability company with an address at 816 56th Street, Brooklyn, New York 11220 ("**Debtor)**, MIRIAM CHAN, ("**Guarantor**") (collectively, the "**Debtor Parties**") and 78 BOWERY REALTY, LLC, a New York Limited Liability Company with an address at 135 West Gate Drive, Huntington, New York 11743 ("**Lender**").

**W I T N E S S E T H:**

A.    On July 19, 2013, the Note, Mortgage, Guaranty, Assignment of Leases, and Loan Documents, each as defined in this Agreement (including Schedule "A" annexed hereto and made a part hereof) (individually and collectively, as the context requires, the "**Loan Documents**"), relating to those certain loans made to the Mortgagor identified on Schedule "A" (individually and collectively, as the context requires, the "**Loan**") was purchased by Lender and assignments of the related mortgages were made to Lender.

B.    Lender is the current holder of the Loan, which is the subject of a foreclosure action presently pending in the Supreme Court of the State of New York, County of New York, under the caption *Arbor Realty SR, Inc. v. Bowery Tower, LLC, New York City Department of Finance, New York State Department of Taxation and Finance, Miriam Chan, "John Doe No. I to John Doe No. XXX,"* inclusive, the last thirty being fictitious and unknown to plaintiff, the persons or parties intended being the tenants, occupants, persons or corporations, if any, having or claiming an interest in or

lien upon the premises described in the Complaint, Index No. 850012/2012 (Part 37 (Arthur F. Engoron, Justice)) (the "**Foreclosure Action**").

C.      On November 22, 2013, the Court issued a Judgment of Foreclosure and Sale (the "**Judgment**") in the Foreclosure Action.

D.      Pursuant to the unentered Judgment, the caption of the foreclosure action was amended to reflect 78 Bowery as plaintiff in place and stead of Arbor Realty SR Inc.

E.      The Debtor Parties and Lender have agreed to a resolution of the above pursuant to the terms of this Agreement.

**NOW THEREFORE**, for good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the parties hereto do hereby agree as follows:

## AGREEMENT

1.      Recitals.  The foregoing recitals are incorporated herein by this reference as if fully set forth herein.  The Debtor Parties, and each of them, agree and acknowledge that the factual information recited above is true and correct.  Except as specified herein, all of the terms and conditions of the Loan Documents, and each of them, shall remain in full force and effect.  In the event of any conflict or inconsistency between the terms, conditions, and provisions of this Agreement and the Loan Documents, the terms, conditions, and provisions of this Agreement shall prevail.

2.      Acknowledgment as to Obligations.

The Parties acknowledge and confirm that as of the Petition Date, there is a dispute as to the total aggregate outstanding amount due under the Loan Documents. The Debtor asserts that the Loan Balance is $8,700,157.80, as of the Petition Date. The Lender asserts the Loan Balance is $9,209,793.54 as of March 27, 2014. The Parties have resolved the dispute and have agreed that the balance due is $8,900,000.00 (the "**Loan Balance**").

(a)    The Debtor Parties each specifically acknowledge and confirm that he, she or it does not have any valid offset or defense to his, her or its respective indebtedness, obligations, and/or liability under the Loan Documents, except as set forth herein.

3.    <u>Reaffirmation of Obligations</u>. This Agreement is, in part, a reaffirmation of the indebtedness, obligations, and liability of the Debtor Parties, and each of them, to Lender as evidenced by each of the Notes, Mortgages, and other Loan Documents, as applicable, except as set forth herein. Therefore, the Debtor Parties, and each of them, represent, warrant, acknowledge, and agree that, except as specified herein, all of the terms and conditions of the Loan Documents are and shall remain in full force and effect, without waiver or modification of any kind whatsoever, and are ratified and confirmed in all respects except as set herein.

4.    <u>Discounted Payoff Amount</u>.

(a)    Subject to the terms and conditions of this Agreement, Lender agrees to accept a discounted payoff amount in the amount of $6,637,500.00 ("**Discounted Payoff Amount**"), for a non-refundable option price of $737,500.00, in full and complete satisfaction of Debtor's and the Guarantor's obligations under the Loan Documents, and to assign the Loan and the Loan Documents, without recourse, representation or warranty of any kind to the Debtor's designee, W25, LLC, ("**Designee**"), it being the intent of the parties that the Debtor shall not purchase the

option. There shall be no offset or adjustment to the Discounted Payoff Amount except as set forth herein.  In the event, and only in the event, that a person or entity other than the Debtor purchases the option from Lender, in the event of a default under this Agreement, the option price shall be immediately released to the Lender and applied as a credit against the Loan Balance.

(b)    Upon satisfaction of the Conditions Precedent (as defined in Section 5 below), Lender shall execute and deliver to Debtor satisfactions of the Mortgage, or an assignment of the, Mortgage and the Loan Documents, without recourse of any kind, to the Debtor's Designee. In the event that: (i) Debtor is unable, for any reason, to perform and/or satisfy in full any and all of the terms, covenants, and conditions set forth in this Agreement (including the conditions set forth in Section 5 below); and/or (ii) an Event of Default (as defined in the Loan Documents or herein) occurs hereunder or under the Loan Documents or herein, then Lender (x) shall have no further obligation or duty whatsoever under this Agreement (including, without limitation, no duty or obligation to accept the Discounted Payoff Amount in satisfaction of Debtor's obligation to repay the Loan Balance to Lender in full, and no duty to return the Option Price).

5.    Payments.

a.    As a condition precedent to the rights, duties, acknowledgements, agreements, obligations and liabilities of Debtor and Lender described in this Agreement, Debtor and Lender, as applicable, shall comply with each and every one of the following conditions (collectively, the "**Conditions Precedent**"):

(i)    Upon the Debtor and Lender executing this Agreement, the purchaser of the option shall pay to Lender's counsel, so as to be received by counsel to the Lender in good funds, a non-refundable option price in the amount of $737,500.00 (the "**Option Fee**") pursuant to wire

transfer instructions to be provided by Lender's counsel. Lender's counsel shall hold the Option Fee in escrow until this Agreement has been approved by the Court, at which time such funds shall be released to Lender; and

        (ii)     Debtor Parties shall pay to Lender, so as to be received by Lender in good funds, the sum of $6,637,500.00 (representing the balance of the Discounted Payoff Amount) on or before July 22, 2014 (the "**Payment Date**"), pursuant to wire transfer instructions to be provided by Lender. **TIME IS OF THE ESSENCE WITH RESPECT TO SUCH PAYMENT.**

        (iii)    If the Debtor elects to take the Mortgage and Loan Documents by assignment, the Debtor shall pay the Lender's counsel $7,500.00 for the preparation of all assignment documents and documents required to record those assignments.

        (iv)    The Payment Date may be extended by thirty (30) days to August 22, 2013, provided that the purchaser of the option: (a) gives notice of such extension to Lender on or before five (5) business days before the original Payment Date; and (b) pays an additional non-refundable amount of $300,000.00 on or before the original Payment Date (the "**Second Option Fee**"), pursuant to wire transfer instructions to be provided by Lender's counsel. In the event the Second Option Fee is paid and the Payment Date is extended to August 22, 2013, in the event of a default under this Agreement, the purchaser of the option shall receive a credit in the amount of the Second Option Fee and may purchase the Loan and receive an assignment of the Loan Documents for $6,337,500.00. This Second Option Fee shall also be applied to the Discounted Payoff Amount, or, if the Debtor defaults under this Agreement, as a credit against the Loan Balance. Upon Court approval of this Agreement, the Option Fee shall be immediately released from escrow to the

Lender.  Lender's counsel is authorized to immediately release the Second Option Fee to Lender upon receipt.  **TIME IS OF THE ESSENCE WITH RESPECT TO SUCH PAYMENTS.**

(v)    Upon Court approval of this Agreement, the First Option Fee may be released from escrow to the Lender to be applied as set forth in this Agreement.

(vi)    Satisfaction of Loan Documents.  Subject to Debtor Parties' satisfaction in full of the obligations set forth in Section 5 above (including, but not limited to, Lender's actual receipt of the Discounted Payoff Amount in full, in good funds) and Section 7 below, the Debtor Parties' indebtedness and obligation(s) to Lender under the Loan Documents shall be deemed satisfied and discharged, or, at the election of the Debtor shall be assigned to its Designee, except for its obligations herein, and in any other covenant or agreement of Debtor Parties set forth in any of the Loan Documents that would otherwise survive the repayment of the Notes and/or the satisfaction of the Mortgages, and Lender shall deliver a Satisfaction of the Judgment (the "**Satisfaction**")or an assignment, as set forth above,  and if it is a Satisfaction, then a release (the "**Debtor's Release**" ) to the Debtor Parties.

6.    General Release of Lender.

(a)    Debtor Parties, and each of them, on behalf of themselves, and each of their respective heirs, successors and assigns, and each of them (for purposes of this Section 7, hereinafter referred to individually and collectively as the "**Releasing Parties**"), do each hereby forever relieve, release, acquit, and discharge Lender and its predecessors, successors and assigns, and its respective past and present attorneys, accountants, insurers, representatives, affiliates, partners, subsidiaries, officers, employees, directors, and shareholders, and each of them (collectively the "**Released Parties**"), from any and all claims, debts, liabilities, demands,

obligations, promises, acts, agreements, costs and expenses (including, but not limited to, attorneys'

fees), damages, injuries, actions and causes of action, of whatever kind or nature, whether legal or

equitable, known or unknown, suspected or unsuspected, contingent or fixed, which the Releasing

Parties, or any of them, now own or hold or have at any time heretofore owned or held or may at

any time hereafter own or hold against the Released Parties, or any of them, by reason of any acts,

facts, transactions, or any circumstances whatsoever occurring or existing through the date of this

Agreement, including, but not limited to, those based upon, arising out of, appertaining to, or in

connection with the Recitals above, the Loan, the Loan Documents, the facts pertaining to this

Agreement, any collateral heretofore granted to Lender or granted in connection herewith

(including, but not limited to, the Property), or to any other obligations of the Releasing Parties, or

any of them, to Lender, or the lending arrangements between Lender and Debtor Parties. If the

Debtor makes the full payment required under this Agreement, the Lender agrees to vacate the

Judgment of Foreclosure and Sale and to vacate any Notice of Pendency, or to assign same, at the

election of the Debtor

      (b)     The Releasing Parties are the sole and lawful owners of all right, title, and

interest in and to every claim and other matter which they purport to release herein, and they have

not heretofore assigned or transferred, or purported to assign or transfer, to any person or any entity

claims or other matters herein released.  Each Releasing Party shall indemnify, defend, and hold

Lender and each of the other Released Parties, and each of them, harmless from and against any

claims, liabilities, actions, causes of action, demands, injuries, costs, and expenses (including, but

not limited to, attorneys' fees), based upon or arising in connection with any such prior assignment

or transfer, any assignment made pursuant to this agreement, or any such purported assignment or

transfer, or any claims or other matters released herein.

7.    The Debtor Parties shall, upon execution of this Agreement, request that the Court approve this Agreement pursuant to Rule 9019 of the Bankruptcy Rules on the earliest possible date.    Lender agrees to cooperate with the Debtor in the filing of any Plan of Reorganization that incorporates the terms of this agreement and to vote for any such Plan,

8.    Upon payment to the Lender of the Discounted Payoff Amount, Lender's Counsel shall provide the Satisfaction, or Assignment, as the case may be to the Debtor Parties, or their Designee.

9.    <u>Escrow Provisions</u>

(a)    The Escrow Agent shall immediately release the Option Fee to Lender upon Court approval of this Agreement, and shall immediately release the Second Option Fee to Lender upon receipt.

(b)    Escrow Agent may act upon any instrument or other writing believed by it, in good faith, to be genuine and to be signed and presented by the proper person, and shall not be liable in connection with the performance of any duties imposed upon the Escrow Agent by the provisions of the Agreement except for the Escrow Agent's own willful default and gross negligence. Escrow Agent shall have no duties or responsibilities except those set forth herein. Escrow Agent shall not be bound by any modification of this Agreement unless the same is in writing and signed by the Debtor Parties and Lender, and, if the Escrow Agent's duties hereunder are affected, unless Escrow Agent shall have given prior written consent thereto. In the event that Escrow Agent shall be uncertain as to the Escrow Agent's duties or rights hereunder, or shall receive instructions from the Debtor Parties, the purchaser of the option or Lender which, in the Escrow Agent's opinion, are in conflict with any of the provisions hereof, the Escrow Agent shall

be entitled to hold and apply the Option Fee and Second Option Fee pursuant to subparagraphs 5(i) and 5(iv) above and may decline to take any other action.

(c)    The Debtor Parties and Lender hereby jointly and severally agree to defend, indemnify and hold the Escrow Agent harmless from and against any and all claims, actions, judgments, losses, liabilities, objections, damages, charges, costs and expenses of any nature whatsoever, including without limitation attorneys' fees and expenses incurred by Escrow Agent, arising directly or indirectly from, out of or incident to the Escrow Agent's duties as Escrow Agent under this Agreement, excepting only those arising out of the Escrow Agent's gross negligence and willful default.

(d)    The Debtor Parties acknowledge that the Escrow Agent has acted and is acting as legal counsel to Lender in connection with this Agreement and the transactions contemplated hereby. By acting as Escrow Agent hereunder, the Escrow Agent is merely acting as a stakeholder and is, therefore, hereby authorized to continue to act as counsel to Lender under all circumstances, including without limitation, with regard to any dispute or controversy arising out of this Agreement, the transactions contemplated hereby or any other matter.

10.    Reservation of Rights.  Except as expressly set forth herein, Lender and the Debtor Parties specifically reserves all of their rights, interests, and remedies at law and in equity, or otherwise, with respect to, in connection with, or relating to the Existing Default, the Loan Documents, and any other agreements, instruments, facts, or matters relating to any of the foregoing.  This reservation of rights is not intended and shall not be construed as exclusive.

11.    Events of Default.  Each of the following shall be considered an event of default ("Event of Default") under this Order: (i) the failure of the Debtor to abide by any term or

condition of this Agreement (specifically including the Payment and Release obligations of paragraph 5, above; (ii) the occurrence of any event of default under the Loan Documents; (iii) the appointment of a Chapter 11 Trustee, (iv) conversion of the Chapter 11 case to a case under Chapter 7 of the Bankruptcy Code, (v) dismissal of the Chapter 11 case, (vi) abstention by the Court from hearing the case, and/or (vii) this Agreement is revoked, suspended, stayed, or reversed on appeal.

    12. <u>Relief from Stay</u>: Upon the occurrence of any Event of Default included above, and at all times thereafter, (a) Lender may settle an order on not less than three (3) business days' notice to the Debtor and the Debtor's counsel providing, among other things, that: (i) the motion to vacate the automatic stay under Section 362(a) of the Bankruptcy Code shall be restored to the Court's calendar on seven (7) days' notice to Debtor.

    13. <u>Subsequent Bankruptcy</u>.  The Debtor Parties agree that, in the event that the any of the Debtor Parties, the Guarantors or any of the persons or parties constituting Debtor Parties shall (i) file with any bankruptcy court of competent jurisdiction or be the subject of any petition under Title 11 of the U.S. Code, as amended ("**Bankruptcy Code**"), (ii) be the subject of any order for relief issued under the Bankruptcy Code, (iii) file or be the subject of any petition seeking any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or other relief for debtors, (iv) have sought or consented to or acquiesced in the appointment of any bank, receiver, conservator, or liquidator, or (v) be the subject of any order, judgment, or decree entered by any court of competent jurisdiction providing a petition filed against such party for any reorganization, arrangement, composition, readjustment, liquidation, dissolution, or similar relief under any present or future federal or state act or law relating to bankruptcy, insolvency, or relief for debtors, Lender shall thereupon be entitled and Debtor Parties irrevocably consent to immediate and

unconditional relief from any automatic stay imposed by Section 362 of the Bankruptcy Code, or otherwise, on or against the exercise of the rights and remedies otherwise available to Lender as provided for herein, in the Replacement Notes, other Loan Documents and as otherwise provided by law, and Debtor Parties hereby irrevocably waive any right to object to such relief and will not contest any motion by Lender seeking relief from the automatic stay and each of the Debtor and the Guarantors will cooperate with Lender, in any manner requested by Lender, in its efforts to obtain relief from any such stay or other prohibition, except upon an Order granting such relief by the Court for good cause shown on notice to the Lender.

   14. <u>Condition Subsequent</u>.  If any payments of money made to Lender by the Debtor Parties or the Debtor's Designee (as defined herein) should for any reason subsequently be declared to be fraudulent (within the meaning of any state or federal law relating to fraudulent conveyances), preferential, or otherwise voidable or recoverable, in whole or in part for any reasons, under the Bankruptcy Code or any other federal or state law (collectively referred to herein as "**Voidable Transfers**") and Lender is required to repay, restore or disgorge the amount of any such Voidable Transfers or any portion thereof, then, as to the amount repaid or restored pursuant to any such Voidable Transfer (including, but not limited to, the Option Fee, the Second Option Fee and the Discounted Payoff Amount), the liability of the Debtor Parties shall automatically be revived, reinstated and restored in such amount or amounts, and shall exist as though such Voidable Transfer had never been made to Lender and any security therefor shall be reinstated.  Nothing set forth herein is an admission that such Voidable Transfer has occurred or will occur.  Debtor Parties expressly acknowledge that Lender may in its sole discretion settle, without defending, any action to void any alleged Voidable Transfer, and that upon such settlement Debtor Parties shall again be liable jointly and severally for any revived debt.

15.    <u>Notices</u>.  Wherever in this Agreement it shall be required or permitted that notice, designation, or demand be given or served by any party to or on any other party, such notice or demand shall be deemed duly given or served if (and shall not be deemed duly given or served unless) such notice is in writing and sent by e-mail and overnight delivery service to:

<u>As to Lender</u>:

78 Bowery Realty, LLC
135 West Gate Drive
Huntington, N.Y. 11743

with a copy to:

Certilman Balin Adler & Hyman, LLP
90 Merrick Avenue
East Meadow, N.Y. 11554
Attn: Richard J. McCord, Esq.

<u>As to Debtor Parties</u>:

Bowery Tower, LLC
816 56th Street
Brooklyn, N.Y. 11220

with a copy to:

Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, N.Y 11743

Notices may be given by the attorney for such party.  However, notice shall be deemed given when a copy of a notice is delivered to a party's counsel by e-mail and overnight delivery and a copy is sent by overnight delivery to the party.

16.    <u>Miscellaneous</u>.

(a)    Except for the payment into escrow provisions of paragraph 5(a)(i), this Agreement is effective upon Court approval.

(b)     This Agreement is binding on any subsequently appointed Chapter 7 or Chapter 11 Trustee.

(c)     With the intent to be legally bound, each of the undersigned hereby covenants and acknowledges that he, she, or it: (i) has read each of the terms set forth herein, (ii) has the authority to execute this Agreement for such person or entity, and (iii) expressly consents and agrees that the person or entity upon behalf of which the undersigned is acting shall be bound by all terms and conditions contained herein.

(d)     This Agreement shall be binding upon and inure to the benefit of each of the parties hereto, and their respective successors in interest, assigns, heirs, and personal representatives. However, Debtor Parties, and each of them, shall not assign or transfer this Agreement or any right or obligation hereunder without the prior written consent of Lender, which consent Lender may withhold in its sole and absolute opinion and judgment.

(e)     The headings of paragraphs of this Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

(f)     Time is and shall be of the essence of each and every provision of this Agreement.

(g)     This Agreement is and shall be governed by and construed in accordance with the laws of the State of New York and the United States Bankruptcy Code. The parties hereby submit to the jurisdiction of the courts located in the State of New York, or the United States

Bankruptcy Court for the Eastern District of New York, for any dispute arising out of this Agreement.

(h)    This Agreement is the product of negotiations of the parties hereto, and in the enforcement or interpretation hereof is to be enforced and interpreted in a neutral manner, and any presumption with regard to construction or interpretation for or against any party by reason of that party having drafted or caused to be drafted this Agreement, or any portion thereof, shall not be effective in regard to the interpretation hereof.

(i)    This Agreement and any documents attached as exhibits or executed contemporaneously herewith constitute the entire agreement of the parties hereto with respect to the subject matter hereof and supersede all agreements, representations, warranties, statements, promises, and understandings, whether oral or written, with respect to the subject matter herewith. This Agreement may not be amended, altered, or modified except by a writing signed by all parties hereto.

(j)    This Agreement may be executed in two or more counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Facsimile or electronic signatures may be accepted as original signatures.

(k)    Debtor Parties, and each of them, and their respective agents or representatives, all agree to sign any and all documents that Lender determines are reasonably necessary in order to carry out the purpose, intent, and effect of this Agreement.

(l)    This Agreement is not a novation, nor, except as expressly provided in this Agreement, is it to be construed as a release or modification of any of the terms, conditions,

warranties, waivers, or rights set forth in the Loan Documents.  Nothing contained in this Agreement shall be deemed to constitute a waiver by Lender of any required performance by Debtor Parties, or of any Event of Default or default heretofore or hereafter occurring under or in connection with the Loan Documents (including, without limitation, the Existing Default).  In the event there is a conflict in any term, condition, or provision of this Agreement, on the one hand, and the Notes, Mortgages, or any of the other Loan Documents, on the other hand, the terms, conditions, and provisions of this Agreement are to control.

(m)    If any provision of this Agreement is found to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Agreement, such provision shall be fully severable; this Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision never comprised a part of this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by severance from this Agreement.

17.    WAIVER OF RIGHT TO TRIAL BY JURY.  EACH PARTY TO THIS AGREEMENT HEREBY EXPRESSLY WAIVES ANY RIGHT TO TRIAL BY JURY OF ANY CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION (1) ARISING UNDER THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR (2) IN ANY WAY CONNECTED WITH, OR RELATED OR INCIDENTAL TO, THE DEALINGS OF THE PARTIES HERETO OR ANY OF THEM WITH RESPECT TO THIS AGREEMENT OR ANY OTHER INSTRUMENT, DOCUMENT, OR AGREEMENT EXECUTED OR DELIVERED IN CONNECTION HEREWITH, OR THE TRANSACTIONS RELATED HERETO OR THERETO, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, AND WHETHER

SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY

AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF

ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.

IN WITNESS WHEREOF, the parties hereto have each executed and delivered

this Agreement as of the date set forth above.

78 Bowery Realty LLC

By: _____

BOWERY TOWER LLC

By: _s/Miriam Chan, Managing Member___

Guarantors:

___s/Miriam Chan___

With respect to the Escrow Provisions of the Agreement, including, without limitation, par. 9.

Certilman Balin Adler & Hyman, LLP

By: _____

SO ORDERED:

756312v1/PJ/10994.002                    16

SOUNDING IN CONTRACT OR TORT OR OTHERWISE; AND EACH PARTY HEREBY AGREES AND CONSENTS THAT ANY SUCH CLAIM, DEMAND, ACTION, OR CAUSE OF ACTION SHALL BE DECIDED BY COURT TRIAL WITHOUT A JURY.

**IN WITNESS WHEREOF**, the parties hereto have each executed and delivered this Agreement as of the date set forth above.

78 Bowery Realty LLC

By: _____

BOWERY TOWER LLC

By: _____
    Miriam Chan, Managing Member

Guarantors:

_____
Miriam Chan

With respect to the Escrow Provisions of the Agreement, including, without limitation, par. 9.

Certilman Balin Adler & Hyman, LLP


By: _____


SO ORDERED:

# EXHIBIT "A"

LEGAL DESCRIPTION